UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL G. SOBOSKY and CAROL E.
SOBOSKY,

                               Plaintiffs,      CIVIL CASE NO. 05-40110

v.

PRODUCT ACTION INTERNATIONAL,      HONORABLE PAUL V. GADOLA
                                                    U.S. DISTRICT COURT

                               Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Product Action International's motion for summary judgment. For the reasons below, the Court grants Defendant's motion for summary judgment.

**I.    Background**

Plaintiff Michael Sobosky is married to Plaintiff Carol Sobosky. On July 15, 2002, Mr. Sobosky began working for Defendant Product Action International as an Engagement Manager. Mr. Sobosky's job duties included developing and maintaining all customer and location contacts on all assigned projects; engaging customer and location contacts to meet their needs; attending meetings with customer and location contacts; completing customer reports; and receiving, reporting, and correcting customer complaints.

At the time of hiring, Mr. Sobosky signed a Confidentiality/Non-Competition and Property Use Agreement ("Agreement"). On November 29, 2003, Mr. Sobosky signed an amended version of the Agreement which states in relevant part:

  6. Prohibition of Certain Forms of Competition After Termination.

>A. For a period of twenty-four (24) months immediately following termination of my employment . . . I shall not . . . perform the same, similar or related services as those I performed for [Defendant] during the twelve (12) months preceding the termination of my employment with [Defendant], for any "Present Customer" of [Defendant]. The term "Present Customer" means any individual, company, entity or business to whom I provided services or goods to during the last twelve (12) months of my employment with [Defendant].
>
>B. For a period of twenty-four (24) months immediately following the termination of my employment . . . I shall not, directly or indirectly, in any individual or representative capacity, own, organize, initiate, accept employment with, engage with, participate with, consult with or assist a "Competitive Business" by performing the same, similar or related services as those I performed for [Defendant] during the last twelve (12) months of my employment with [Defendant]. As used in this Agreement, the term "Competitive Business" means any individual, company, entity or business that is engaged in providing quality assurance, assistance or services to manufacturers and does business with [Defendant]'s Present Customers.
>
>7. <u>Non-Solicitation</u>.
>For a period of twenty-four (24) months immediately following termination of my employment . . . I will not, directly or indirectly, call on, solicit, perform services for, interfere with or endeavor to entice away from [Defendant] any Present Customer to perform the same, similar or related services as [Defendant] performs for the customer.
>
>8. <u>Activities Permitted After Termination</u>.
>[Defendant] and I acknowledge that the provisions in paragraphs 6 and 7 do not prohibit me from: . . . (2) working for a Competitive Business performing different services than I performed for [Defendant]; . . . .

Pl. Amd. Comp., Exh. 3 (May 6, 2005).

Defendant terminated Mr. Sobosky's employment on October 29, 2004. Shortly thereafter, Mr. Sobosky started work as a Sales Engineer for ATCO Industries, Inc. ("ATCO"). It is undisputed that ATCO is in direct competition with Defendant. Mr. Sobosky admitted that he contacted several of Defendant's customers in order to obtain their business for ATCO.

On February 4, 2005, Defendant sent a letter to ATCO advising that Mr. Sobosky was in breach of the Agreement. Approximately four days later, ATCO sent a letter to Defendant indicating that Mr. Sobosky's employment with ATCO was terminated.

On May 6, 2005, Plaintiffs brought this action against Defendant with the following claims: (I) requesting declaratory relief pursuant to 28 U.S.C. § 2210(a) and asking this Court to declare the Agreement unenforceable; (II) asserting that Defendant committed age discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act, codified under M.C.L. § 37.2101; (III) asserting that Defendant committed tortious interference with regard to Mr. Sobosky's employment with ATCO; and (IV) asserting Mrs. Sobosky's loss of consortium. This court has jurisdiction of this case on the grounds of the parties' diversity of citizenship.

On August 8, 2006, pursuant to the parties' stipulation, this Court issued an order dismissing the declaratory relief and age discrimination claims with prejudice. Accordingly, only the tortious interference and loss of consortium claims remain.

**II.     Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however,

to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission

of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**III.    Analysis**

    **A.    Tortious Interference with a Business Relationship**

Defendant argues that summary judgment is appropriate with regard to Plaintiffs' tortious interference claim because Plaintiffs offer no evidence that Mr. Sobosky's employment with ATCO was not a violation of his 2003 Agreement with Defendant. Defendant also argues its February 4, 2005 letter to ATCO was factually and legally justified, and that there is no evidence that Defendant acted with malice or with an intent to interfere with Mr. Sobosky's relationship with ATCO. Accordingly, Defendant argues that there is no genuine issue of material fact and that Plaintiffs' tortious interference claim fails as a matter of law.

In opposition, Plaintiffs argue that the Agreement expressly allowed Mr. Sobosky to work for Defendant. Plaintiffs argue that as a result of Paragraph 8 of the Agreement, Mr. Sobosky had the right to contact former customers of Defendant as long as he was performing "different services" than what Mr. Sobosky had performed while employed for Defendant. Further, Plaintiffs argue that Defendant's February 4, 2005 letter to ATCO was wrongful, malicious, and sent without a legitimate business purpose. Plaintiffs contend that sending a letter to ATCO is a specific, affirmative, and wrongful act that supports Plaintiffs' tortious interference claim against Defendant.

Because this case is in federal court on grounds of diversity jurisdiction, Michigan law

governs. *See DXS, Inc. v. Siemens Medical Systems, Inc*., 100 F.3d 462, 468 (6th Cir. 1996). Under Michigan law, Plaintiffs must establish the following elements to prevail on a tortious interference with a business relationship claim:

> (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Wausau Underwriters Inc. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003).

The parties do not dispute that Mr. Sobosky had a valid business relationship with ATCO and that Defendant knew that Mr. Sobosky and ATCO had a business relationship. The dispute in this case centers on whether Defendant intentionally interfered with Mr. Sobosky's business relationship with ATCO, causing ATCO to terminate Mr. Sobosky's employment.

"One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 157-58 (Mich. Ct. App. 2004) (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp*., 649 N.W.2d 808, 812 (Mich. Ct. App. 2002)). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 635 (Mich. Ct. App. 1992). "[D]efendants motivated by legitimate business reasons are protected from liability under this cause of action." *Id.*

When considering the facts in the light most favorable to the nonmoving Plaintiffs, the Court finds that Defendant had a legitimate business reason for sending the February 4, 2005 letter to

ATCO, as Mr. Sobosky was potentially acting in violation of his earlier 2003 Agreement against competition.

In interpreting a contract, the Court must determine the intent of the contracting parties. *Quality Prod. & Concepts Co. v. Nagel Precision, Inc*., 666 N.W.2d 251 (Mich. 2003). Whenever possible, the parties' intent is to be discerned from "the language in the contract, giving it its ordinary and plain meaning as such would be apparent to a reader of the instrument." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003). "When determining what the parties' agreement is, the court should read the contract as a whole and give meaning to all the terms contained the policy." *Century Surety Co. v. Charron*, 583 N.W.2d 486, 488 (Mich. Ct. App. 1998).

Paragraph 6 of the Agreement indicates that Mr. Sobosky was able to work for ATCO, a competitor of Defendant, as long as Mr. Sobosky did not perform the same, similar, or related services as he performed for Defendant. Paragraph 7 also prohibited Mr. Sobosky from contacting or soliciting Defendant's customers if it enticed customers away from Defendant and to same, similar, or related services performed by a competitior. Most impotantly, Paragraph 9 of the Agreement stated the following:

> Reasonable Restrictions: I acknowledge that, as an employee of [Defendant], I will become conversant with the affairs, customers and other confidential information of [Defendant]. I acknowledge that my compliance with the provisions of this Agreement is necessary to protect the trade secrets, goodwill and other proprietary interests of [Defendant]. **I acknowledge that the prohibitions set forth in paragraphs 6 and 7 above, including the restricted period of time and customer limitations are reasonable in view of the nature of the business in which [Defendant] is engaged and my knowledge of [Defendant]'s operations and [Defendant]'s legitimate business interest in protecting its trade secrets and goodwill.** I acknowledge that [Defendant] will suffer irreparable injury if I engage in the conduct prohibited herein. I understand the work I may and may not perform after my employment with [Defendant] terminates and represent that my experience and abilities are such that observance of these terms will not cause me any undue hardship or unreasonably interfere with my ability to earn a livelihood. . . .

Pl. Amd. Comp., Exh. 3 (May 6, 2005) (emphasis added).

Considering the Agreement as a whole, it is clear that Defendant wished to protect its "trade secrets, goodwill and other proprietary interests," including its present customer base. It is undisputed that Mr. Sobosky worked for Defendant's competitor and contacted many of Defendant's customers. Plaintiffs, however, have failed to bring forward any evidence demonstrating that Mr. Sobosky was performing "different" services for Defendant and that Mr. Sobosky was not performing the same, similar, or related services. As noted in Paragraph 9 of the Agreement, Defendant has a legitimate business interest in protecting trade secrets and its customer information. Thus, when it became aware of Mr. Sobosky's work for ATCO, Defendant had a legitimate reason to send a letter to ATCO.

Moreover, the letter to ATCO from Defedant did not threaten Mr. Sobosky's employment nor request his termination. Taking the evidence in the light most favorable to nonmoving Plaintiffs, there is absolutely no evidence that Defendant sent the letter to ATCO based on a motivation that was anything other than an attempt to protect legitimate business interests.

In conclusion, there is no genuine issue of material fact and, as a matter of law, Plaintiff cannot satisfy the elements required to sustain his tortious interference claim. Thus, Defendant is entitled to summary judgment on Plaintiff's tortious interference claim.

### B.     Loss of Consortium

Defendant argues that summary judgment is appropriate with regard to Plaintiffs' loss of consortium claim, because all of Plaintiffs' other claims fail and a derivative loss of consortium claim cannot be sustained unless Plaintiff has a legally cognizable injury. The Court agrees with Defendant. "[A] claim for loss of consortium is usually considered to be derivative, but only in the

sense that it does not arise at all unless the other, impaired spouse has sustained some legally cognizable harm or injury." *Eide v. Kelsey-Hayes Co.,* 427 N.W.2d 488, 489 (Mich. 1988).

With the dismissal of Plaintiffs' last remaining claim of tortious interference, Plaintiffs do not have a legally cognizable harm or injury. Thus, Plaintiffs cannot sustain a cause of action for loss of consortium and Defendant is entitled to summary judgment.

**IV.    Conclusion**

For all of the reasons discussed above, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 27] is **GRANTED**.

**SO ORDERED.**


Dated:   March 30, 2007                                          s/Paul V. Gadola
                                                                 HONORABLE PAUL V. GADOLA
                                                                 UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   April 3, 2007   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                    Donald L. Bramlage, Jr.; Brian M. Ziff                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                      .

                                                                 s/Ruth A. Brissaud
                                                                 Ruth A. Brissaud, Case Manager
                                                                 (810) 341-7845